NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAHAIJ WELLS,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH NELSON, ET AL.,<br><br>Defendants. | Civ. No. 13-6024<br><br>**OPINION** |

THOMPSON, U.S.D.J.

This matter comes before the Court upon the Motion of Defendant Jimmy Barnes[1] to Dismiss *pro se* Plaintiff Tahaij Wells's Complaint in lieu of an answer. (Doc. No. 28). Plaintiff opposes the motion. (Doc. No. 30). The Court has issued the Opinion below based upon the written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendant's motion will be denied.

BACKGROUND

Plaintiff brings a 42 U.S.C. § 1983 claim contesting the conditions of his current confinement in New Jersey State Prison.

On June 11, 2004, Plaintiff was convicted of First Degree Aggravated Manslaughter and sentenced to an 18 year term of incarceration. (Compl. ¶ 1). The Special Investigations Division ("SID") determined that the manslaughter was gang related and recommended Plaintiff's placement in Involuntary Protective Custody ("IPC"). (*Id.* ¶¶ 3, 16). Plaintiff disputed the need to be held in protective custody. (*Id.* ¶ 3). Nevertheless, based on SID's recommendation,

---

[1] The other three Defendants, Di Benedetti, Kenneth Nelson, and Victor Sierra have not yet been properly served.

Plaintiff was placed in IPC at the Garden State Youth Correctional Facility on August 4, 2004. (Compl. ¶ 4). On August 26, 2004, Plaintiff was transferred to New Jersey State Prison. (Compl. ¶ 5). The Inmate Classification Committee reviewed Plaintiff's IPC status and affirmed his continued placement in IPC based on SID's confidential findings. (*Id.* at ¶¶ 6, 8, 9). Plaintiff continued to receive routine classification hearings that affirmed his continued placement in IPC. (*Id.* at ¶¶ 14, 21-24). Plaintiff continued to contest his IPC placement and filed appeals of the Classification Committee's decision. (*Id.* at ¶¶ 14-18). Defendant Barnes reviewed one of Plaintiff's initial appeals and affirmed his continued placement in IPC. (*Id.* at ¶¶ 17, 23-25).

Plaintiff continues to be held in IPC and has now been held there for over 10 years. On February 28, 2014, Plaintiff filed a Complaint against Barnes and three other individuals involved in Plaintiff's IPC determination, seeking damages and an injunction to remove him from IPC and place him into the general prison population.[2] Plaintiff asserts that his Due Process rights have been violated because there are no grounds to confine him in IPC. (*Id.* at ¶ 16). Moreover, he asserts that he did not receive at least one classification hearing per year as required by N.J.A.C. 10A:5-5.4, and that the classification hearings he did receive did not meet the standards mandated by N.J.A.C. 10A:5-5.2 because his IPC placement was based solely on confidential findings, the reliability of which was not assessed. (*Id.* at ¶¶ 11, 13).

Defendant Barnes was properly served on June 16, 2014 and subsequently filed this Motion to Dismiss in lieu of an answer on August 13, 2014. (Doc. No. 19, 28).

## DISCUSSION

a. Legal Standard for Motion to Dismiss Under Rule 12(b)(6)

---

[2] Plaintiff initially submitted his Complaint on October 9, 2013, but his first application to proceed *in forma pauperis* was denied, and the case was terminated without prejudice.

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The court may disregard any conclusory legal allegations. *Id*. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" instead, the facts must allow a court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id*. at 210, 211 (quoting *Iqbal*, 556 U.S. at 678–79).

    b.  Analysis

*Due Process Claim*

Courts conduct a two-step inquiry in assessing due process claims: first, the court determines whether there is a protected "liberty or property" interest within the meaning of the Fourteenth Amendment; and second, if there is such an interest, the court determines the sufficiency of process due to protect it. *See Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). In the prison setting, protected liberty interests may be created by state law, but such creation is limited to those situations where deprivation of an interest "imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Thus, inmates held in segregated custody in prison may have a Fourteenth Amendment protected liberty interest in being confined in the general prison population if the conditions of the segregated custody "impose atypical and significant hardship on the inmate." *Id.* In considering what constitutes "atypical and significant hardship" within the prison setting, the Third Circuit looks to the conditions and duration of the prisoner's segregated confinement. *See Shoats*, 213 F.3d at 144 (considering "the amount of time the prisoner was placed into disciplinary segregation; and . . . whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates"); *Griffin v. Vaughn*, 112 F.3d 703, 708–09 (3d Cir. 1997) ("If an inmate is committed for an atypical period of time to undesirable conditions in violation of state law, that is clearly a factor to be considered in determining whether he has been subjected to atypical and significant hardship, and accordingly, whether due process protection has been triggered.").

Here, it is clear that Plaintiff's description of his ten-year confinement in IPC alleges an "atypical and significant hardship" that implicates a protected liberty interest. Under the terms of Plaintiff's IPC placement, he is confined in his cell for all but 10 minutes per day to shower, and one hour and forty-five minutes three days a week for outdoor recreation. (Compl. at 10.) He eats all his meals in his prison cell. (*Id.*) Moreover, he is not allowed any contact with others; he is only allowed non-contact family visits and recreation. (*Id.*) He is not allowed access to the prison library nor to vocational courses. (*Id.*). His confinement thus resembles the conditions the Third Circuit has previously found to be an "atypical and significant hardship" sufficient to create a protected liberty interest. *See Shoats*, 213 F.3d at 144 (finding a Fourteenth Amendment liberty interest where the inmate was held for eight years in administrative

4

confinement that locked him in his cell for all but two hours per week, restricted contact with his family, and denied library and vocational privileges); *Huertas v. Sec'y Penn. Dep't of Corrs.*, 533 Fed. App'x 64 (3d Cir. 2013) (finding a due process liberty interest when plaintiff was held in administrative custody for over seven years); *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (collecting cases).

Having found that Plaintiff has pled a protected liberty interest, the court must assess whether, at this motion to dismiss stage, Plaintiff has asserted a violation of due process. The due process afforded to prisoners placed in administrative custody consists of an "informal, nonadversary review at which the prisoner has the opportunity to state his views." *Huertas*, 533 Fed. App'x at 67 (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). In addition, N.J.A.C. 10A:5-5.4 requires IPC inmates to receive classification hearings at least once per year, and N.J.A.C. 10A:5-5.2 requires an inquiry into the reliability of confidential informant information that forms the basis for IPC placement. Specifically, N.J.A.C. 10A:5-5.2 states:

> In any case in which the Disciplinary Hearing Officer or Adjustment Committee's decision is based on evidence that includes confidential information, the adjudication shall contain:
>
> i. A concise summary of the facts on which the Disciplinary Hearing Officer or Adjustment Committee concluded that the informant was credible or his or her information reliable; and
>
> ii. The informant's statement (either in writing or as reported) in language that is factual rather than a conclusion and based on the informant's knowledge of the matters contained in such statement.

Plaintiff asserts that after receiving an initial IPC hearing, he did not receive his next one until five years later. (Compl. ¶ 15). Moreover, Plaintiff asserts that the hearings he did receive did not include meaningful review of his IPC placement since the placement was based solely on a confidential SID report, there was no investigation of the reliability of that report, and Plaintiff

did not receive any information regarding the SID report, let alone "a concise summary of the facts . . . conclud[ing] that the informant was credible or his or her information reliable." N.J.A.C. 10A:5-5.2; Compl. ¶ 15.  Construing the pleadings liberally in Plaintiff's favor and accepting his factual allegations as true, it appears that Plaintiff has asserted a due process violation.

*Immunity*

Defendant asserts that Plaintiff's claims are barred because Defendant was acting within the scope of his official duties and thus cannot be sued in his official capacity for damages.  State employees are not "person[s]" within the meaning of 42 U.S.C. § 1983 and thus, cannot be sued in their official capacity for damages.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).  However, state officers may be sued in their official capacity to enjoin a continuing violation of federal law.  *See Ex Parte Young*, 209 U.S. 123 (1908).  State officers may also be sued in their individual capacity for damages.  *See Hafer v. Melo*, 912 F.2d 628, 635 (3d Cir. 1990) ("In a suit against state officials in their personal capacity, however, where the plaintiff seeks recovery from the personal assets of the individual, the state is not the real party in interest; the suit is therefore not barred by the Eleventh Amendment.").

Here, Plaintiff seeks "compensatory" and punitive damages against the Defendant and requests an injunction that will force Defendant to release Plaintiff from IPC into the general prison population.  Construing the Complaint liberally, it appears that Plaintiff is seeking damages against Defendant in his personal, rather than official, capacity and an injunction.  Thus, Plaintiff's claims are not barred by Defendant's immunity claims.  Therefore, Defendant has not shown that Plaintiff's Complaint failed to state a plausible claim for relief under Rule 12(b)(6).

## CONCLUSION

For the reasons above, Defendant's Motion to Dismiss is denied.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.
