NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TAHAIJ WELLS,

    Plaintiff,

v.

KENNETH NELSON, JIMMY BARNES,
VICTOR SIERRA, and DIBENEDETTI,

    Defendants.

Civ. No. 13-6024

OPINION

RECEIVED

JUN 1 6 2017

AT 8:30_____M
WILLIAM T. WALSH
CLERK

THOMPSON, U.S.D.J.

This matter comes before the Court upon the Motion by Plaintiff Tahaij Wells for a Preliminary Injunction. (ECF No. 72). Jimmy Barnes, the sole remaining defendant, ("Defendant") opposes. (ECF No. 78). The Court has issued the Opinion below based upon the written submissions, oral argument conducted on May 10, 2017, and testimony presented on June 14, 2017. For the reasons stated herein, Plaintiff's motion will be granted.

## BACKGROUND

Plaintiff seeks a preliminary injunction in order to be released from involuntary protective custody ("IPC") and placed in general population for the remainder of his sentence, until February 2018. In Plaintiff's underlying 42 U.S.C. § 1983 claim, he contests the conditions of his current IPC confinement in New Jersey State Prison as a violation of his constitutional rights under the Eighth and Fourteenth Amendments.

In short, Plaintiff was arrested in 2002 at the age of 17 and held at the Mercer County Correction Center in general population for 19 months pending trial. In June 2004, he pleaded guilty to aggravated manslaughter, was waived into adult status for prosecution, was sentenced

1

to 18 years, and entered the New Jersey Department of Corrections ("DOC" or "Department") custody. At that time, Plaintiff was almost immediately placed in involuntary protective custody ("IPC"). The Special Investigations Division ("SID") for the DOC received information from Investigators Lieutenant Henry Loftin, Jr. and Phyllis Oliver of the Mercer County Correction Center stating a belief that the killing for which Plaintiff was convicted was an unauthorized killing of a fellow Bloods gang member and that there would be a "hit" on Plaintiff's life for that offense. For the past twelve years and ten months, Plaintiff has been primarily in non-congregate IPC, in which he does everything alone—eat, sleep, and exercise. He was briefly on congregate IPC in 2011, but was removed and placed again in non-congregate IPC after a fight at the gym. (*See* ECF No. 88). Plaintiff testified the fight was a basketball tussle with no injuries. Plaintiff argues that IPC status is unnecessary, and he did not receive hearings and thorough review of his status in accordance with the Department's regulations.

Plaintiff alleges that there is no "current" threat to his safety and the DOC's concern and reports on the supposed threat are all based solely on unsubstantiated, stale information from 2004. Defendant argues that there is no evidence that the "hit" on Plaintiff's life has been removed, and thus the threat is "current."

Plaintiff argues, in addition to the harm of being on non-congregate IPC status for almost thirteen years, from ages eighteen through thirty-one, he is and will suffer particular harm because he is due to be released in February 2018 and needs to attend re-entry courses and regain social skills prior to exiting the prison system.

## DISCUSSION

In order to obtain a preliminary injunction, the moving party must show: "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably

2

injured . . . if relief is not granted . . . 3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, No. 16-3722, Precedential Opinion at 5 (3d. Cir. May 25, 2017)[1] (citing *Del. R. Port Auth. V. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). Then, "a district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two." *Id.* at 6 (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)). The moving party must show a "significantly better than negligible but not necessarily more likely than not" ability to win on the merits and that "it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* at 11 (collecting cases). "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.* at 9 (citing *Hoosier Energy Rural Elec. Coop. Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). The Circuit upheld "the traditional flexibility to granting interim equitable relief in which the district court has full discretion to balance the four factors once gateway thresholds are met." *Id.* at 9 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)). "[N]o test for considering preliminary equitable relief should be so rigid as to diminish, let alone disbar, discretion." *Id.* at 10.

Clearly, almost thirteen years in solitary confinement imposes extreme harm on an individual, especially when the individual enters at a young age. Dr. Santina, the expert retained by Plaintiff, testified that Plaintiff suffers significant emotional and social impairment as a result of his IPC status, and those impairments persist. Plaintiff suffers from significant anxiety, especially social anxiety, and his status exacerbated his existing depression. This Plaintiff knew

---

[1] Clarifying the preliminary injunction analysis in the Third Circuit.

3

no father; his mother was a drug addict who was murdered when he was 10-years-old. He was sent to special education as a youngster. Plaintiff's IPC status has impeded his ability to address and ameliorate his Attention Deficit Hyperactivity Disorder, and his ADHD has limited his ability to take advantage of the self-study educational opportunities available to those in IPC. Additionally, his cognitive and social development has been impaired by his isolation. Dr. Santina's professional opinion is that "placement in general population, with the concomitant access to rehabilitative services and programming that are afforded, is necessary to remediate the harm caused by prolonged isolation and enable [Plaintiff] to address his cognitive, attentional, and social deficits prior to being released from prison." (Decl. Kraner Ex. 22, at 2, Dr. Santina's Psychological Evaluation). Plaintiff is due to be released on February 8, 2018. The Court finds that Plaintiff has and will continue to suffer irreparable harm if he remains on IPC status.

The Court recognizes the difficult job that DOC officials face and the concerns about risk to Plaintiff, other inmates, and prison staff. However, Plaintiff is and has been involuntarily placed in protective custody based on information from 2004. Investigator Koch testified that they typically would not reinvestigate, and had not reinvestigated, the matter after the initial information was given. They at SID rely on the facts provided to them from state or federal law enforcement, prosecutors, or judges.

An inmate's placement in general population must pose a current safety or security risk. *Mims v. Shapp*, 744 F.2d 946, 953 (3d Cir. 1984) (noting the justification for segregation "may fluctuate with the passage of time and change of circumstances"); *Proctor v. LeClaire*, 846 F.3d 597, 609, 611 (2d Cir. 2017) (the purpose of periodic reviews "is to ensure that the state's institutional interest justifying the deprivation of the confined inmate's liberty has not grown stale and that prison officials are not using [administrative segregation] as a pretext for indefinite

4

confinement of an inmate"; thus, "past events alone" should not be used "to justify indefinite confinement"). Defendant does not dispute that the threat must be current; rather, he argues that because there is no evidence that the "hit" has been lifted, there is no evidence that it is not current.

The DOC cannot rely upon stale information of a threat to keep Plaintiff involuntarily in protective custody. Balancing the harm to Plaintiff of remaining in isolation with this stale information, the Court finds that the factors weigh in favor of granting this preliminary injunction.

## CONCLUSION

For the reasons above, Plaintiff's Motion for Preliminary Injunction will be granted.

Date: June 16, 2017

ANNE E. THOMPSON, U.S.D.J.

5